# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>370 UNITS OF HARDWARE BEARING<br>THE REGISTERED TRADEMARK OF<br>CISCO SYSTEMS, INC.,<br><br>    Defendants, | No. 2:15-cv-02360-JPM-tmp |

**ORDER GRANTING MOTION TO STRIKE CLAIM AND ANSWER; VACATING THE COURT'S ORDERS DENYING CLAIMANT'S MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS; AND DENYING CLAIMANT'S MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS**

Before the Court is the Government's Motion to Strike Claim and Answer, filed December 17, 2015. (ECF No. 31.) Claimant Core 3 Technologies ("C3T") responded in opposition on December 31, 2015. (ECF No. 32.) The Government filed a reply brief on January 14, 2016. (ECF No. 33.) With leave of Court, on February 10, 2016, C3T filed a sur-reply. (ECF No. 37.) The Court held a hearing on the instant motion on February 24, 2016. (Min. Entry, ECF No. 38.)

For the following reasons, the Government's Motion to Strike Claim and Answer is GRANTED.

I. **BACKGROUND**

This case concerns three hundred seventy (370) units of hardware imported into the United States through the FedEx World

Hub in Memphis, Tennessee, between November 28, 2012, and December 13, 2012. (Compl., Ex. A. ¶¶ 2, 4-5, ECF No. 1-1; Answer to Ex. A. ¶¶ 2, 4-5, ECF No. 24.) The Government alleges that the labels on these units "contained a 'Cisco' word mark with a 'bridge' design that is identical to or substantially indistinguishable from the registered and recorded Cisco trademark." (Compl., Ex. A ¶ 5; Answer to Ex. A ¶ 5.) The Government alleges that it sent samples to the Customs and Border Protection ("CBP") Laboratory, which reported inconsistencies between the seized goods and genuine Cisco trademarked goods. (Compl., Ex. A ¶¶ 6-7.) Ultimately, the Government determined that "the suspect 'Cisco' mark on the modules constituted a counterfeit mark such that the modules were subject to seizure." (Compl., Ex. A ¶ 17.) On January 28, 2013, the Government seized the defendant property. (Compl. ¶ 2; Answer ¶ 2.)

The United States brought this civil forfeiture proceeding on May 27, 2015. (Compl., ECF No. 1.) On May 29, 2015, the Court entered an Order for CBP to seize the defendant property and hold it subject to further orders of the Court. (ECF No. 4.) On June 30, 2015, Core 3 Technologies ("C3T") filed a Verified Claim to the seized property. (ECF No. 14.) C3T then filed a Motion to Dismiss on July 14, 2015. (ECF No. 15.) The Court denied the motion on September 3, 2015. (ECF No. 23.)

On September 22, 2015, C3T filed an Answer. (ECF No. 24.) C3T then filed a Motion for Judgment on the Pleadings on September 25, 2015. (ECF No. 25.) The Court denied the motion on November 25, 2015. (ECF No. 29.) On December 17, 2015, C3T filed a petition for writ of mandamus to the United States Court of Appeals for the Sixth Circuit. (ECF No. 30.)

On December 17, 2015, the Government filed a Motion to Strike Claim and Answer, arguing that C3T does not have a valid claim to the seized property. (ECF No. 31.) C3T responded in opposition on December 31, 2015. (ECF No. 32.) The Government filed a reply brief on January 14, 2016. (ECF No. 33.) With leave of Court, C3T filed a sur-reply on February 10, 2016. (ECF No. 37.) The Court held a hearing on the Motion to Strike Claim and Answer on February 24, 2016. (Min. Entry, ECF No. 38.)

## II. LEGAL STANDARD

Supplemental Rule G(8)(c)(i) provides that "[a]t any time before trial, the government may move to strike a claim or answer: (A) for failing to comply with Rule G(5) or (6), or (B) because the claimant lacks standing." Supplemental Rule G(8)(c)(ii) further instructs that such a motion "must be decided before any motion by claimant to dismiss the action." The Advisory Committee Notes to this section explains that this structure is in place because "[a] claimant who lacks standing

is not entitled to challenge the forfeiture on the merits." Supp. Admiralty & Maritime Claims R. G, Advisory Committee Notes.

**A. Standing**

"In order to contest a governmental forfeiture action, claimants must have statutory standing through compliance with Supp. Admiralty and Maritime Claims R. C(6),[1] as well as the Article III standing required for any action brought in federal court." United States v. $515,060.42 in U.S. Currency, 152 F.3d 491, 497 (6th Cir. 1998). Constitutional standing under Article III consists of three elements:

> First, the plaintiff must have suffered an injury in fact, an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, rather than conjectural or hypothetical. Second, there must be a causal connection between the injury and the challenged action of the defendant. Third, it must be likely, as opposed to merely speculative, that the injury would be redressed by a favorable decision.

United States v. Funds in the Amount of $239,400, 795 F.3d 639, 643 (7th Cir. 2015) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

The Sixth Circuit has found that "[a] property interest less than ownership may . . . be sufficient to create standing. Possessory interests may be sufficient to bestow standing on a

---

[1] Prior to Supplemental Rule G's adoption in 2006, Supplemental Rule C governed claim procedure in civil forfeiture actions. See United States v. One Men's Rolex Pearl Master Watch, 357 F. App'x 624, 628 n.2 (6th Cir. 2009).

claimant to contest a forfeiture." $515,060.42 in U.S. Currency, 152 F.3d at 498 (citation omitted). The inquiry into whether a lesser interest is sufficient focuses on whether "[t]he economic harm to a party with a possessory interest in seized property, imposed by virtue of its liability to the owner of such property, . . . constitute[s] a palpable injury sufficient to confer standing under Article III." Via Mat Int'l S. Am. Ltd. v. United States, 446 F.3d 1258, 1263 (11th Cir. 2006) (finding that the transporter of seized currency had a possessory interest in the currency); see also United States v. Cambio Exacto, S.A., 166 F.3d 522, 527 (2d Cir. 1999) ("While ownership or possession of property may provide evidence of standing, and in some circumstances act as, in effect, a surrogate for an inquiry into whether there is injury direct enough and sufficient enough to sustain standing, it is injury that is at the heart of the standing question."). "[T]he fundamental requirement is that claimants have at least a facially colorable property interest in the proceedings sufficient to satisfy Article III's 'case-or-controversy' requirement." $515,060.42 in U.S. Currency, 152 F.3d at 498.

The purpose of this inquiry is to ensure that the claimant has "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends

for illumination of difficult constitutional questions." Torres v. $36,256.80 U.S. Currency, 25 F.3d 1154, 1157 (2d Cir. 1994) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)). "[D]ue to concerns about 'straw man' transfers, . . . [w]hen confronted with mere physical possession of property as a basis for standing, we require some explanation or contextual information regarding the claimant's relationship to the seized property." $515,060.42 in U.S. Currency, 152 F.3d at 498. "Similarly, bare legal title, in the absence of assertions of dominion, control or some other indicia of ownership of or interest in the seized property, is insufficient to confer standing to challenge a forfeiture." Id. at 498 n.6.

**B. Supplemental Rule G(6)**

Supplemental Rule G(6) permits the government to serve special interrogatories in forfeiture actions to determine whether a claimant has standing. Specifically, it provides that "[t]he government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property . . . . Answers or objections to these interrogatories must be served within 21 days after the interrogatories are served." Supp. Admiralty & Maritime Claims R. G(6)(a)-(b); see also United States v. Funds in the Amount of $547,840, 719 F.3d 648, 650 (7th Cir. 2013) ("The purpose of such interrogatories

6

is to smoke out fraudulent claims—claims by persons who have no colorable claims.")

If a claimant fails to respond to the special interrogatories, the Government may move to strike a claim or answer for failing to comply with Supplemental Rule G(6). Supp. Admiralty & Maritime Claims R. G(8)(c)(i)(A). The Advisory Committee Notes to this Rule clarify that:

> the court should strike a claim or answer only if satisfied that an opportunity should not be afforded to cure the defects under Rule 15. Not every failure to respond to subdivision (6) interrogatories warrants an order striking the claim. But the special role that subdivision (6) plays in the scheme for determining claim standing may justify a somewhat more demanding approach than the general approach to discovery sanctions under Rule 37.

Supp. Admiralty & Maritime Claims R. G, Advisory Committee Notes.

### III. ANALYSIS

#### A. Timeliness

C3T argues that the Government has "waived" the ability to challenge standing by failing to raise the issue prior to the Court's decision on the Motion to Dismiss. (ECF No. 37 at 1-2.) At the hearing, the Government argued that Supplemental Rule G(8)(c)(i) permits it to challenge standing at any time before trial and, regardless, that standing is a jurisdictional requirement such that the Court cannot consider challenges by a Claimant who lacks standing.

7

The Court agrees with the Government. "Standing is 'the threshold question in every federal case.'" Coyne v. Am. Tobacco Co., 183 F.3d 488, 494 (6th Cir. 1999) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). Supplemental Rule G(8)(c)(i) sets a procedural deadline for the Government to challenge standing. Supplemental Rule G(8)(c)(ii), on the other hand, sets a procedural requirement for the Court to consider challenges to standing before a motion to dismiss. A challenge to standing should be resolved before a motion to dismiss because a claimant who lacks standing cannot challenge the forfeiture actions on the merits. See Supp. Admiralty & Maritime Claims R. G, Advisory Committee Notes.

To comply with the procedure set forth in Supplemental Rule G, the Court hereby VACATES its orders denying C3T's Motion to Dismiss and Motion for Judgment on the Pleadings. The Court next considers the challenge to C3T's standing.

**B.  Standing**

The Government argues that C3T's Claim and Answer should be stricken for lack of standing because C3T has failed to show that it has suffered an injury-in-fact, that its alleged injury is causally related to the seizure of defendant property, or that its alleged injury would be redressed by the return of the property. (ECF No. 31 at 4-6.) Specifically, the Government argues that because C3T had not yet paid for the property, C3T

8

suffered no injury aside from "the inconvenience of not receiving the items it ordered in timely fashion." (Id. at 6.) Additionally, the Government argues that "the government's seizure of the property was not the cause of claimant's injury, if any"; instead, it was the independent acts of two other companies, Verification Systems Technology ("VST") and London Network Systems ("LNS"), that interfered with C3T's attempt to acquire genuine Cisco hardware. (ECF No. 33 at 3.) The Government also asserts that it is not clear that C3T "would be entitled to ownership or possession of the defendant property if it were released from government custody by the Court" and, accordingly, fails to demonstrate redressability. (Id. at 3-4.) C3T argues that it has standing because it has "an obvious possessory interest" in the defendant property. (ECF No. 32 at PageID 246.)

The Court is not persuaded that C3T has suffered "an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent." Funds in the Amount of $239,400, 795 F.3d at 643. It is undisputed that C3T did not pay for the seized property and, therefore, lacks an ownership interest in the property. (See ECF No. 18 at PageID 127.) It is further undisputed that C3T did not have actual or constructive possession of the property at the time of the seizure. (See id.) C3T's argument, then, is that its future

9

right to possess the not-yet-paid-for property is sufficient to establish a possessory interest and, as a result, an injury-in-fact.

Despite C3T's contention of some future possessory interest, however, it does not allege and cannot demonstrate that it is subject to actual or imminent harm as a result of the seizure.  Because C3T has not paid for the defendant property, it has not experienced any financial loss as a result of the seizure.[2]  Moreover, because C3T apparently has no obligation to pay for the defendant property if the Cisco marks on the property are determined to be counterfeit, and no obligation to pay if the Cisco marks are determined to be genuine yet the products are untimely delivered, neither is there a risk of imminent financial loss.  In other words, C3T has no risk of loss in litigating this action.  If the property is determined to be counterfeit, and the forfeiture upheld, C3T's only loss will be its legal expenditures.  If the property is determined to be genuine, and the goods are returned, C3T seemingly may decide whether to enforce the contract, which stipulates that "ALL PRODUCT MUST ARRIVE NO LATER THAN 11/28/12," but which

---

[2] In a letter from Chris Bergen, the Managing Partner of C3T, to LaDon Tucker, John Carpenter, and Marcelo Mancheno, employees of CBP, dated December 13, 2012, Bergen notes that "[t]he client has also canceled the remaining shipments for the order due to the product being held up." (ECF No. 18-6 at PageID 152.)  C3T fails to allege, however, that it suffered any financial or goodwill loss from the client's cancellation of the order. Without an allegation to this effect, the Court cannot speculate that C3T incurred such a loss.

C3T's counsel represented was still in effect. (See ECF No. 18-3 at PageID 145.)

The purpose of the "case or controversy" requirement is to avoid this precise scenario. The claimant must have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." $36,256.80 U.S. Currency, 25 F.3d at 1157 (quoting Baker, 369 U.S. at 204). Because C3T will sustain no real loss regardless of the outcome of this forfeiture action, C3T cannot establish that it has a sufficient personal stake in the outcome of this case. It is well established that "[a]bstract injury is not enough. It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute or official conduct." Id. at 493 (quoting Massachusetts v. Mellon, 262 U.S. 447, 488 (1923)).

Although C3T makes a conclusory allegation that it has a possessory interest in the defendant property, it fails to specifically allege what, if any, harm it has endured or will endure. See Block v. Meese, 793 F.2d 1303, 1308 (D.C. Cir. 1986) (A "mixture of speculation and conclusory assertion[s] . . . does not satisfy the Supreme Court's requirement for 'specific, concrete facts' demonstrating injury, and

'particularized allegations of fact.'" (quoting Warth, 422 U.S. at 508, 501)). Notably, C3T does not assert that it has suffered or will imminently suffer a financial loss, loss of client goodwill, or any other concrete or tangible loss related to the seizure of defendant property. C3T merely asserts that it has a possessory interest and argues that such a possessory interest alone is sufficient to establish standing.

At the hearing on the instant motion, C3T's counsel repeatedly stated that, if the seized property were returned, "the contract would kick in." As written, however, the contract may now be voided at C3T's whim, based on London Network System's failure to deliver the 370 units by the stated deadline. Thus, C3T is not obligated to pay for or receive the 370 units, even if they are returned at the conclusion of this action. Accordingly, C3T's bare assertion of a possessory interest is insufficient to establish that C3T suffered, or is in imminent danger of suffering, a concrete, particularized injury. See Morrison v. Bd. of Educ. of Boyd Cnty., 521 F.3d 602, 608 (6th Cir. 2008) ("To avoid conferring standing by way of guesswork, we require that a litigant demonstrate either a concrete harm or the threat of such harm." (citing Laird v. Tatum, 408 U.S. 1, 13 (1972))); $515,060.42 in U.S. Currency, 152 F.3d at 498. C3T therefore lacks standing to assert a claim

to the seized property, and the Motion to Strike its Claim and Answer is GRANTED.

**C.  Compliance with Supplemental Rule G(6)**

Alternatively, the Government asserts that C3T's Claim and Answer should be stricken because C3T failed to comply with Supplemental Rule G(6).  Specifically, the Government argues that C3T improperly objected to and failed to answer Special Interrogatories Nos. 2 and 7, which the Government maintains were designed to determine "the true identity of the claimant in this case; in particular, whether it is actually C3T, or whether VST . . . is actually prosecuting the claim on its behalf." (ECF No. 31 at 8-9.)  Additionally, the Government argues that C3T improperly objected to and failed to answer Special Interrogatory No. 3, which it asserts was designed to discover the identity of the claimant.  (Id. at 10.)  Finally, the Government argues that C3T improperly objected to and failed to answer Special Interrogatory No. 6, which the Government asserts "seeks details about the purchase-and-sale agreement between the claimant and London Network Systems for the defendant property" and "goes to the heart of the issue of whether the relationship between the claimant and the defendant property is such that the claimant has Article III standing to pursue its claim." (Id. at 11.)

13

C3T argues that it has provided sufficient information under Supplemental Rule G(6), including "its articles of incorporation, purchase orders for the defendant property, and the invoice pertaining to the commercial transaction." (ECF No. 32 at PageID 250.)

### 1. Special Interrogatories Nos. 2 and 7

In Special Interrogatory No. 2, the Government asked C3T to:

> Identify the individual verifying the claim of Core 3 Technologies on behalf of claimant, including name, address, occupation and title(s), and describe in detail the nature and extent of that individual's current and any former relationship to claimant, as well as his current and any former relationship to Verification Systems Technology (VNS) and London Network Systems, Ltd. (LNS). Please identify each witness (by name, address and telephone number) and each document (and the name, address and telephone number of the custodian of the document) that supports your answer.

(ECF No. 18 at PageID 125.)

In Special Interrogatory No. 7, the Government asked C3T to:

> State the relationship, if any, between claimant and Verification Systems Technology ("VST"), including whether they affiliated in any way, whether VST has ever acknowledged any liability to claimant, to LNS, or to any other party in connection with the seizure of the defendant property, whether VST has ever reimbursed claimant, LNS, or any other party, either in whole or in part, based on the seizure of the defendant property, and whether VST is prosecuting the instant claim on claimant's behalf, or on behalf of any other party, under a subrogation agreement or any other legal contract. Please identify each witness

> (by name, address and telephone number) and each document (and the name, address and telephone number of the custodian of the document) that supports your answer.

(Id. at PageID 129.) C3T objected to both Special Interrogatory Nos. 2 and 7 in their entirety, as "having nothing to do with either the identity of this claimant or its relationship to the defendant property." (Id. at PageID 129; id. at PageID 125-26.)

C3T is correct that these special interrogatories are beyond the scope of Supplemental Rule G(6). These interrogatories seek more information about the relationship between C3T and VST. Despite the Government's contention that it is concerned that VST is prosecuting the claim on C3T's behalf, these questions are not limited to C3T's identity and its relationship with the defendant property. For purposes of determining standing, C3T's relationship with VST is irrelevant. If C3T satisfied the constitutional and statutory standing requirements,[3] it would be permitted to prosecute its claim for the defendant property, regardless of its motivation in doing so or its relationship with another corporate entity. Because Special Interrogatories No. 2 and 7 were beyond the scope of Supplemental Rule G(6), C3T is not subject to sanctions for failing to respond.

---

[3] As discussed above, however, C3T does not satisfy the constitutional standing requirements. See supra Part III.B.

### 2. Special Interrogatory No. 3

In Special Interrogatory No. 3, the Government asked C3T to "[s]tate the names and addresses of all officers, members, agents, authorized representatives and employees of Core 3 Technologies ("C3T") during the last five (5) years, and indicate the position each such individual held." (ECF No. 18 at PageID 126.) The Government asserts that "the identities of [C3T's] principals go to the very core of its corporate identity." (ECF No. 31 at 10.) C3T objected to this special interrogatory in its entirety as being beyond the scope of Supplemental Rule G(6). (ECF No. 18 at PageID 126.)

To some extent, the Government is correct that because C3T is a limited liability company, the identities of its members and officers are relevant to its corporate identity. The special interrogatory is overly broad, however, as to its request that C3T identify all individuals who were agents, authorized representatives, or employees of the company during the last five years. For this reason, striking C3T's Claim and Answer would be an extreme remedy for its failure to answer this special interrogatory. Because the Court has found that C3T lacks standing, and therefore strikes C3T's Claim and Answer, it declines to determine what would be the appropriate remedy.

### 3. Special Interrogatory No. 6

In Special Interrogatory No. 6, the Government asked C3T to:

> State, in detail, the purchase arrangement for the defendant property between the claimant and London Network Systems, LTD. ("LNS"), including the purchase price, the date of any purchase/sale agreement, the payment terms, whether and when claimant has ever tendered payment to LNS, in whole or in part, in exchange for the defendant property, and if so, whether LNS has ever refunded that payment to claimant, in whole or in part, based on the seizure of the defendant property or for any other reason. Please identify each witness (by name, address and telephone number) and each document (and the name, address and telephone number of the custodian of the document) that supports your answer.

(ECF No. 18 at PageID 128.) In response, C3T referred to its answer to Special Interrogatory No. 4 and the attached exhibits, but objected to Special Interrogatory No. 6 "[b]eyond this." (Id. at PageID 129.)

Between its answer to Special Interrogatory No. 4 and the attached exhibits, C3T largely answered Special Interrogatory No. 6. Specifically, C3T provided the original and revised purchase agreements for the defendant property, which reflect that the purchase price was to be $122.00 per unit for 650 units, totaling $79,300.00. (See ECF No. 18-3 at PageID 145.) Additionally, C3T specifically stated in its answer to Special Interrogatory No. 4 that it paid only for the units that it

received, which is supported by the attached Exhibits E and F. (See ECF No. 18 at PageID 127; ECF Nos. 18-5, 18-6.)

Although C3T did not state whether London Network Systems ever refunded a portion of this payment, such request is outside the scope of Supplemental Rule G(6) in this specific instance. Because C3T did not pay for the defendant property, any refund that London Network Systems provided to C3T would have related to the received units, rather than the defendant property. Accordingly, the request for information regarding a refund did not concern C3T's relationship with the defendant property.

Additionally, C3T did not explicitly provide identifying information about witnesses or custodians of the attached documents in response to this special interrogatory. C3T did, however, provide a list of names and addresses of "all persons known or believed . . . to have knowledge or information pertaining to [C3T's] ownership of the defendant units of hardware" in response to Special Interrogatory No. 8. This response sufficed to answer Special Interrogatory No. 6, to the extent said interrogatory requested identifying information about witnesses or document custodians.

Accordingly, C3T adequately answered Special Interrogatory No. 6, and the Government is not entitled to strike C3T's Claim or Answer on the basis of noncompliance with Supplemental Rule G(6).

**IV. CONCLUSION**

The Government's Motion to Strike Claim and Answer is GRANTED based only on C3T's lack of standing. C3T's Verified Claim (ECF No. 14) and Answer (ECF No. 24) are hereby stricken from the record. Because C3T lacked standing to bring a Motion to Dismiss or Motion for Judgment on the Pleadings, these motions are DENIED for lack of standing. See supra Part III.A (vacating the Court's earlier orders denying said motions to comply with Supplemental Rule G's requirement to determine standing before a claimant's motion to dismiss).

**IT IS SO ORDERED**, this 16th day of March, 2016.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE